IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS BROWN,

    Plaintiff,

v.                                                         Civil Action No. 5:10cv93
                                                        Judge Stamp

JOHN KING, Chief of Operations,
WV Regional Jail Authority; TERRY
MILLER, Executive Director;
WARDEN MICHAEL MARTIN,
Administrator TVRJ; CHAD M.
CARDINAL, ESQUIRE, General
Counsel, TVRJ; MATTHEW BENNETT,
Correctional Officer, TVRJ; JOHN
DOE VANCE, Correctional Officer,
TVRJ; LT. RICHARD COX, Chief
Correctional Officer, TVRJ; JOHN
DOE PIGLEY, Correctional Officer,
TVRJ; SERGEANT MICHAEL WAYNE,
Correctional Officer, TVRJ,

    Defendants.

## REPORT AND RECOMMENDATION

### I.  Procedural History

On September 8, 2010, plaintiff initiated this case by filing a civil rights complaint under 42 U.S.C. § 1983 in United States District Court for the Southern District of West Virginia.

On September 14, 2010, an Order was entered transferring the case to this District.

Plaintiff is proceeding *pro se,* was granted permission to proceed *in forma pauperis* on October 12, 2010, and paid an initial partial filing fee on October 25, 2010. On December 16, 2010,

the plaintiff was directed to provide the Court with copies of the grievance forms submitted to support his claim that he had exhausted his administrative remedies. On January 3, 2011, the plaintiff responded with copies of his grievance forms. On January 31, 2011, upon a preliminary review of the file, the undersigned determined that summary dismissal was not appropriate, and directed the United States Marshal Service to serve the Complaint.

On February 28, 2011, the defendants filed a Motion to Dismiss with a Memorandum of Law in support. Because the plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u>[1] Notice on April 22, 2011. The plaintiff filed a response to the defendants' motion on May 19, 2011, to which the defendants replied on May 24, 2011.

On June 9, 2011, plaintiff filed a response to the defendants' reply, titled Plaintiff's Response to Defendant's (AMENDED Response/Answer) "Reply Memorandum of Law in Support of Defendant's [sic] Motion to Dismiss" and Plaintiff's Motion to Strike and/or Dismiss Pleading. On June 20, 2011, the defendants filed a Defendants' Response to: Plaintiff's Motion to Strike and/or Dismiss Pleading.

This case is before the undersigned for a report and recommendation on the pending motions.

## II. Contentions of the Parties

### A. The Complaint and Memorandum of Law (Dkt.# 2 and 4)

In the complaint, the plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when, despite being on notice of the potential for great harm,

---

[1] <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a pro se plaintiff of his right to file material in response to a motion for summary judgment).

2

the defendants intentionally, sadistically and with deliberate indifference to his safety and health, failed to protect him from assault by other inmates by placing him in a pod with two inmates against whom plaintiff had "keep-away" orders.[2]

In support of this claim, plaintiff asserts that he entered the Tygart Valley Regional Jail ("TVRJ") on or about May 3, 2008. He avers that while there, he was moved a total of thirteen different times because of various threats upon his physical safety and well being, and/or verbal or physical altercations. He alleges that each of the defendants, acting under color of state law, individually and collectively participated in deliberately placing him into a cell block with Don Daws and Aaron Maynor ("Daws and Maynor"), two inmates against whom he had existing "keep away" orders.[3] Plaintiff contends that as a result of his placement in Daws and Maynor's cell block,[4] he was savagely beaten by them and eight to ten of "their buddies," sustaining injuries that included serious facial injuries, including a broken nose, split lip, a facial fracture or fractures, and an eye that had to be "pushed back into his skull." He also claims his shoulder was kicked out of place; he required a plate to fix his facial fracture; numerous stitches, including fifteen each in his lip and/or shoulder alone;[5] with emergency treatment at two different hospitals.

Plaintiff, an African American, alleges that after he was released from the jail's medical infirmary on an unspecified later date, in another attempt to have him savagely beaten again for the

---

[2] Plaintiff's complaint actually states that the two inmates "had asked to be kept away from" him, but taken in context with the whole of plaintiff's complaint, it appears that plaintiff was asking to be kept away from them. Without a copy of the actual keep-away orders, it cannot be clarified.

[3] Plaintiff does not provide the dates that the pre-existing "keep-away" order or orders were initiated.

[4] Although plaintiff's complaint does not set forth the exact date on which the assault occurred, his later filings clarify that the date was either September 7 or 8, 2008.

[5] Plaintiff's allegation as to where he received 15 stitches is unclear; the allegations set forth in the October 10, 2008 letters titled "Grievance," and addressed to defendants John King and Terry Miller are capable of being interpreted either as stitches received in the lip or shoulder. (Dkt.# 19-1 at 6 and 7).

3

sadistic viewing pleasure of the Caucasian defendants, he was then placed into a pod where only "hate mongering" self-professed Ku Klux Klan ("KKK") and Aryan Brotherhood Caucasian inmates were housed, placing him in life-threatening danger of further attack.[6]

He contends that his injuries have never been completely repaired; he has not been able to get further medical attention for his injuries beyond the initial emergency treatment; he is physically and mentally scarred; and is still in constant pain.

More specifically, plaintiff alleges that defendants John King ("King") and Terry Miller ("Miller") were "responsible for the grievances" plaintiff wrote; aware of the "keep away" orders but did nothing to ensure his safety; with deliberate indifference "gave tacit authorization" to the sadistic actions of the other defendants who actually carried out the violation; and acquiesced to his being severely assaulted.

As for defendant Correctional Officer Matthew Bennett ("Bennett"), petitioner alleges that he knew or should have known about the keep-away orders; moved him to the pod where the inmates who assaulted him were anyway; was physically present during the assault; and in an attempt to protect himself after the assault, "wrote a disciplinary fight against" plaintiff,[7] even though plaintiff was "covering up"[8] in order to attempt to minimize the brutal assault.

Plaintiff alleges that defendant John Doe Pigley ("Pigley") should have been aware of the keep-away order(s) in effect; should have known his life was in danger; was working the "Tower"

---

[6] Plaintiff does not allege that this further attack ever occurred or that he was in fact physically harmed, let alone threatened with harm or harassed by the KKK/Aryan Brotherhood inmates in this pod.

[7] Plaintiff claims that even though he was written up for fighting, there was never a hearing held concerning the matter. (Dkt.# 2 at 12).

[8] The Court presumes that by "covering up," plaintiff is intending to convey his position is that he was not participating in the fight but merely trying to shield himself from the blows of the other 10 - 12 inmates who were allegedly attacking him.

4

on the day of his assault; had a full view of the entire incident but did not respond to the initial assault in a timely manner, permitting him to be severely beaten before summoning assistance.

As to defendant Mike Martin ("Martin"), plaintiff alleges he was personally notified of the complaints plaintiff filed regarding his assault and the aftermath, but with "complete and utter deliberate indifference" ignored everything plaintiff wrote, giving tacit authorization to the acts of his subordinates who actually carried out the violation.

As to defendant John Doe Vance ("Vance"), plaintiff alleges that for "some unknown reason" Vance displayed an "over hatred and/or extreme dislike" of him and after the assault, when plaintiff was finally released from the jail's infirmary, Vance transported him to the pod with the hostile-to-African American KKK and Aryan Brotherhood inmates. When plaintiff protested his placement there, he alleges Vance grabbed him by the arm that was still in a sling, twisted his hand, causing excruciating pain, then violently shoved him into his cell, using excessive force.[9] Plaintiff asserts that he immediately requested assistance from Vance's superiors[10] who were present at the time, but his entreaties were met with "complete deliberate indifference." Further, he alleges, Vance threatened him with violence on several occasions[11] and he filed a grievance about the issue. He also alleges that Vance repeatedly verbally assaulted him, calling him "asshole" and making racially derogatory remarks, and whenever he entered plaintiff's cell, threw objects at him in an attempt to cause further harm. Plaintiff alleges that this was witnessed by Counselor Hatley, who assisted him in writing up

---

[9] It appears that this incident may be the incident that occurred on September 15, 2008, the date plaintiff filed a grievance against Vance for taking him to the floor, trying to break his left thumb and pulling his ear. Plaintiff alleges that when he screamed for help, Vance stopped when the help finally arrived. (Dkt.# 19-1 at 1).

[10] Plaintiff does not identify who the "superiors" were.

[11] It is unclear whether plaintiff is alleging that these incidents were those referred to in his September 12, 2008 grievance filed against Vance. (Dkt.# 19-1 at 2).

a grievance concerning it.[12]

As for defendant Lt. Richard Cox ("Cox"), plaintiff alleges that Cox: refused to take any pictures of his injuries after the assault; intentionally lied when asked why plaintiff was placed into protective custody; and was the one who, after plaintiff was released from the infirmary, actually directed defendant Vance and Wilt[13] to place him in the pod where no other inmates besides the KKK and Aryan Brotherhood inmates were housed.

Petitioner alleges that Defendant Sergeant Michael A. Wayne ("Wayne") "personally told me that several of the inmates "admitted" to him that they all jumped me and was very proud of it," and Sgt. Wayne told him it was "best that I go to protective custody in order to not be beaten again."

Finally, plaintiff alleges, without providing specifics as to dates, that defendant Chad Cardinal, Esq. ("Cardinal"): was "very aware" that several inmates had warned that there would be "serious trouble and danger to my personal health and safety" from the other inmates; denied his right to know exactly how many keep-away orders were actually in place; and denied his request for a copy of a list of the keep-away order(s) for his case, purportedly under the guise of it being for "security reasons."

Plaintiff avers that he has exhausted his administrative remedies by filing grievances to inform the defendants of his complaints and requesting administrative action in the form of punishment for the offending inmates. He alleges that his complaints have been met with "complete and utter deliberate indifference," "nothing was done" and the inmates who attacked him have never

---

[12] The grievances plaintiff filed as a result of these incidents (Dkt.# 19-1 at 2 and 3) were filed on September 12 and 15, 2008, respectively. The September 12, 2008 grievance appears to be the one Counselor Hatley assisted plaintiff with; the other grievance is in plaintiff's own handwriting. Plaintiff's September 15, 2008 grievance against Vance alleges that Vance struck him with the thrown objects.

[13] Plaintiff did not identify "Wilt" any further, did not name "Wilt" as a defendant and makes no further mention of him in his complaint.

been disciplined.

As relief, the plaintiff seeks reimbursement of his filing fees and all associated costs; and although he does not seek compensatory damages, he requests $25,000.00 in punitive damages against each defendant, and any and all relief that the Court deems necessary and just.

**B. Plaintiff's Response to Order of Compliance of Administrative Remedies (Dkt.# 19)**

Plaintiff provides copies of three WV Regional & Correctional Facility Authority Inmate Grievance form reports to "Mr. Martin" (presumably defendant Mike Martin, the Administrator of T.V.R.J.), one dated September 12, 2008 and two dated September 15, 2008; two WV Regional & Correctional Facility Authority Inmate Request forms, addressed to Lt. Cox (presumably defendant Lt. Richard Cox), dated September 9 and 23, 2008 respectively.[14] He also provides two letters, containing nearly identical text,[15] each titled "Grievance," each dated October 10, 2008, one addressed to defendant Terry Miller (Dkt.# 19-1 at 6) and one to defendant John King (Id. at 7),

---

[14] The September 12, 2008 grievance report to Mr. Martin (Id. at 2) reports that defendant John Doe Vance "1) . . . told me to get my ass out of the shower or he would come & get me. 2) Day before yesterday Ofc. Vance called me an asshole in m___ [illegible]. 3) Today he was harassing me about leaving 2 mats [sic? - illegible] in my cell." Under the section titled "Response/Disposition," nothing is written.
  The September 15, 2008 grievance report to Mr. Martin (Id. at 1) states: "At 1500 hours on 9-15-08 Ofc. Vance tryed [sic] to brack [sic] my left thumb, I was taken to the floor by him then I screamed for Cpl. Wilt to help me, then Vance pulled my ear. He stoped [sic] when Wilt came." Under the section titled "Response/Disposition," nothing is written.
  The other September 15, 2008 grievance report to Mr. Martin (Id. at 3) states: "Ofc. Vance hit me with my things that were in my sheets. I screamed for help because he walked yup [sic] on me, he seen Counselor Hatley and stop." Under the section titled "Response/Disposition," nothing is written.
  The September 9, 2008 request form report to Lt. Cox (Id. at 4) requests "Pictures of Injuries for my attorney and documentation of what happened to me." The "Response/Disposition," signed by Cox and dated the same day, was "This will be investigated by law enforcement. You will have an opportunity to give a statement to them."
  The September 23, 2008 request form report to Lt. Cox (Id. at 5) states "would like to request the hearing from Friday 19 on protective custody report." The "Response/Disposition," signed by Cox and dated the next day, was "Approved." Under "Remarks," was written "Delivered this date."

[15] The only difference in the text of the two letters is that in the letter to Miller, plaintiff states, *inter alia,* among his many injuries, he received "15 stiches [sic] in my lip" incident to the beating, and in the letter to King, he states "[m]y shoulder was kick [sic] out of place and was giving [sic] 15 stiches [sic][.]"

7

reporting the assault, his constant subjection to "racial hatred at this jail by inmates and officers," and requesting to be transferred[16] back to South Central Regional Jail (S.C.R.J.), where he was incarcerated before coming to the T.V.R.J., "because my life is in danger here . . . This Grievance is notrorized [sic] in case I get killed."

**C.  The Defendants' Motion to Dismiss and Memorandum in Support (Dkt.# 33 and 34)**

In their motion to dismiss, the defendants argue that the plaintiff's complaint should be dismissed as time-barred, because under West Virginia law, the statute of limitations for a personal injury action is two years; plaintiff's assault occurred on May 3, 2008; and he did not file his civil action until September 8, 2010.  Further, they argue, the defendants, as public executives, enjoy qualified immunity, shielding them from personal civil liability for official acts undertaken while acting within the scope of their authority.

**D.  The Plaintiff's Response to the Defendants' Motion to Dismiss (Dkt.# 47)**

In his response to the motion to dismiss, the plaintiff first asserts that the factual basis for the defendants' motion is inaccurate, disputing defendants' contention that his civil action was filed as a result of a "fight between he and two other inmates which occurred on May 3, 2008." He reiterates his claim that defendants: subjected him to cruel and unusual punishment; used excessive force against him; and were deliberately indifferent the grave harm of serious physical injury posed to him by inmates who were supposed to be "kept away" pursuant to  valid "keep away" orders, alerting all jail staff of "very imminent probability" of serious risk of harm and/or danger.

Second, he denies that the incident occurred on May 3, 2008, pointing out that his  complaint only avers that May 3, 2008 was the date he first arrived at T.V.R.J.  He asserts that the date of the

---

[16] The docket reflects that plaintiff is no longer at Tygart Valley Regional Jail; he has been transferred to Mount Olive Correctional Complex.

beating was either September 7 or 8, 2008, and attaches several exhibits to support his claim.[17]

Third, he disputes defendants' assertion that his claim is time-barred, saying that because he deposited his "lawsuit" for filing with the United States District Court in Charleston, WV, by submitting it to the Mount Olive Correctional Complex's post office approximately 5 - 7 days prior to September 8, 2010, pursuant to the mailbox rule, it was timely filed. He admits that it was returned as undeliverable, although he asserts that it was correctly addressed "basically in the same form as inmates have done numerous times," and that he re-sent it to the Court on September 7, 2010, the same day he received it back, through the MOCC legal mail, along with a letter to the Court explaining what happened, with the original envelope and postage marking from the "returned mail." As proof of this, he attaches a copy of a September 7, 2010 letter to the Hon. Mary Stanley at U.S. District Court, Southern District, explaining the situation.[18] (Dkt.# 47-1 at 1).

Fourth, plaintiff disputes defendants' claim that they are entitled to qualified immunity.

Fifth, plaintiff asserts that defendants did not timely serve him with a copy of its answer to

---

[17] Plaintiff attaches a WV Regional Jail & Correctional Facility Authority Rule Violation Report (Dkt.# 47-1 at 4), which states that the "alleged violation occurred at approximately 1215 hours on Sunday, 7 Sept 2008. Circumstances of the alleged violation are as follows: . . . Inmate Brown was involved in a fight with another inmates [sic] Dan Daws and Aaron Maynor." The Rule Violation Report was signed by defendant Matthew Bennett. plaintiff notes that he was never found guilty of the Disciplinary Violation. .

[18] The letter plaintiff attached, also docketed as Dkt.# 5, and states, *inter alia,* that "[o]n September 1, 2010 I mailed . . . my COMPLAINT (enclosed). Today, September 7, 2010, I received it back as 'RETURN TO SENDER - INSUFFICIENT ADDRESS - UNABLE TO FORWARD - RETURN TO SENDER.' I am re-mailing my COMPLAINT back to you . . . also enclosing the box as I received it back so that you will know that I did mail it timely. This is an important issue, in that, my Statute of limitations for the filing of this Civil Action is September 7, 2010. I, also, proffer that my three (3) day mailing for this should also apply. I do not want to loose [sic] my right to file this Civil Action for something that is not my fault." The copy of the envelope from the original mailing shows that although plaintiff otherwise correctly identified the Clerk, the name of the courthouse in the U.S. District Court's Southern District, the city, state and zip code in the address, he did not include the street address of the courthouse. Nevertheless, it supports plaintiff's claim that it was first mailed on September 1, 2010.

his complaint until he submitted his "DEFAULT" filings.[19]

Plaintiff requests that the court deny "Plaintiff's" [sic] motion to dismiss, requests appointment of counsel and any other relief the court might award.

E. **The Defendants' Reply to the Plaintiff's Response (Dkt.# 48)**

In their reply to the plaintiff's response, the defendants' counsel admits misconstruing the date of May 3, 2008 as the date of plaintiff's assault and withdraws the defendants' claim that this action was not timely filed.

Defendants expand on their previous argument that they are entitled to qualified immunity. Specifically, the defendants assert that plaintiff's allegations that

1) defendants King and Miller were responsible for his written grievances and

2) were aware of the keep-away order

should fail, because plaintiff did not assert that he communicated with either King or Miller before the date of the September 7, 2008 assault, only that King and/or Miller, or their staff showed "complete deliberate indifference" to his grievances filed after the fact. Accordingly, they contend, King and Miller's handling of plaintiff's grievances must be viewed as an exercise of their judgment and discretion within the scope of their official duties. Moreover, defendants argue, neither defendant can be liable under West Virginia law, even if proven negligent, because plaintiff did not allege that their handling of his grievances violated any of his clearly established statutory or constitutional rights.

Defendants argue that plaintiff's specific claim against defendant Martin is unclear, although

---

[19] On May 2, 2011, plaintiff filed a Request to Clerk for Entry of Default (Dkt.# 41) and Plaintiff's Notification to Court Concerning Not Being Served With Defendant's Answer/Response to Plaintiff's Complaint (Dkt.# 42). By Order entered on May 5, 2011, plaintiff's motion for entry of default was denied. (Dkt.# 43).

it appears to be very similar to the allegations against defendants King and Miller: merely that defendant Martin should have decided plaintiff's grievance differently.  Defendants contend that to the extent plaintiff named defendant Martin as an individual defendant in connection with his investigation of the September 7, 2008 inmate fight, or his handling of plaintiff's grievance about the fight, Martin is immune from suit and the claim should be dismissed.  Further, they assert, like with defendants King and Miller, *supra,* because  plaintiff has not alleged that Martin's handling of his grievances violated any of his clearly established statutory or constitutional rights, he cannot overcome defendant Martin's right to qualified immunity.

Defendants assert that plaintiff's claim against defendant Chad Cardinal, Esq. should be dismissed as it appears to amount to a simple discovery dispute; petitioner only alleges that Mr. Cardinal denied him a list of the keep-away orders and copies of them.  Should this case not be dismissed, copies of the relevant documents will be produced if ordered by the Court.  Because plaintiff has failed to state a claim against Mr. Cardinal, he should be dismissed from this action.

Finally, the defendants contend that the allegations against defendants Bennett, Vance, Cox, Wayne and Pigley, with the exception of the battery alleged against Defendant Vance, should be dismissed because they are shielded from civil liability for their discretionary judgments and actions by the doctrine of qualified immunity.  The claim against Vance, if not dismissed in its entirety, should move forward solely on the allegations contained in ¶¶ 5 - 10  of Count Six in the complaint.

**F.  <u>The Plaintiff's Response to the Defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss and Motion to Strike and/or Dismiss Pleading (Dkt.# 50)</u>**

Plaintiff avers that he was not served with a copy of defendant's response/answer and its associated memorandum of law until he filed his motion for default, and moves to strike it for as a violation by defendants of Fed. R. Civ. Pro. 7, 12 and 15.  Further, he argues that the defendants'

11

purported memorandum in support is actually an amended response, filed without leave of court, and should be struck and/or dismissed on that ground.

**G. The Defendants' Response to Plaintiff's Motion to Strike and/or Dismiss Pleading (Dkt.# 51)**

Defendants deny that they did not timely serve plaintiff with their motion to dismiss and its memorandum in support and provide an affidavit from their office manager attesting the same. Defendants contend that plaintiff's reliance on Rules 7, 12 and 15 of the Federal Rules of Civil Procedure is misplaced; their reply memorandum is expressly permitted by Local Rule of Civil Procedure 7.02; and that it was timely filed within seven days of plaintiff's response to the motion to dismiss. Defendants contend that plaintiff's motion to strike and/or dismiss pleading should be denied.

### III. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should

only be ordered when the legal theories are "indisputably meritless,"[20] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## IV. Analysis

In the complaint, it appears that the plaintiff is challenging the defendants' deliberate indifference of the defendants on three bases: 1) deliberate indifference to his incarceration under dangerous conditions posed by other prisoners, 2) deliberate indifference to excessive force being used against him by jail staff, and 2) deliberate indifference to his serious medical needs.

### A. Deliberate Indifference

In order to state an Eighth Amendment claim of failure to protect, the plaintiff must show that prison officials violated their duty to protect him "from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" *Id.* The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. *Id.* at n. 3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety;

---

[20] Id. at 327.

the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. Estelle, *supra* at 104.[21] In order to establish an Eighth Amendment violation, a prisoner must prove two elements: 1) that objectively, the deprivation of a basic human need was "sufficiently serious," and 2) that subjectively, the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

With regard to claims of inadequate medical attention, the objective component is satisfied by a serious medical condition. A medical condition is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), *cert. denied,* 486 U.S. 1006 (1988).[22] A medical condition is also serious if a delay in treatment causes a life-long handicap or

---

[21] The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991).

[22] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kan. 1977). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F.3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F.Supp. 547 (S.D. W. Va. 1995). And arthritis is a serious medical condition because it causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F.Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008).

permanent loss. Monmouth, *supra* at 347.

The prisoner may satisfy the subjective component of a "cruel and unusual punishment" claim by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra* at 837. "[A]cting or failing to act with deliberate indifference to a substantial risk to a prisoner is the equivalent of recklessly disregarding that risk." Id. at 836. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

In the complaint, the plaintiff asserts that defendant Wayne told him that several of the inmates who had beaten him bragged to Wayne about it. Further, he asserts, Wayne advised him that it was best for him to go into protective custody to avoid being beaten again. The plaintiff does not allege that defendant Wayne actually participated in any of the alleged abuse. Moreover, Wayne, in advising plaintiff to go into protective custody, was exercising his judgment and discretion and acting reasonably within the scope of his official duty to protect plaintiff from further harm. Accordingly, the plaintiff cannot maintain this action against defendant Wayne. See Monell v. Department of Social Services, 436 U.S. 658 (1978) (in order to establish personal liability against a defendant in a §1983 action, the defendant must have been personally involved in the alleged wrongs); see also Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997).

Plaintiff also asserts that defendant Cardinal was "very aware" of the danger to his health and

safety, but does not allege how Cardinal was aware, or even if he had any knowledge, before the beating, that plaintiff had been placed in a pod with those against whom he had existing keep-away orders. He further alleges that defendant Cardinal refused to provide him with a list of his keep-aways or copies of them. The plaintiff does not allege that defendant Cardinal actually participated in any of the alleged abuse. Further, defendant Cardinal, in exercising his judgment and discretion as general counsel for Tygart Valley Regional Jail, was acting reasonably within the scope of his official duty, in declining to release confidential documents without a court order directing him to provide discovery. Accordingly, the plaintiff cannot maintain this action against defendant Cardinal. See Monell v. Department of Social Services, 436 U.S. 658 (1978), *supra.*

**B.   Verbal Threats and Harassment**

Numerous courts around the country have held that "even the most abusive verbal attacks do not violate the constitution." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Nor do words or threats amount to assault under 42 U.S.C. §1983. Pierce v. King, 918 F.Supp. 932 (E.D.N.C. 1996), aff'd, 131 F.3d 136 (4th Cir. 1997), cert. granted and jdgmt. vacated on other grounds, 525 U.S. 802 (1998). Accordingly, to the extent that the plaintiff asserts that defendant Vance or any other person verbally threatened or harassed him, those claims are without merit.

**C.   Eighth Amendment Claims**

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991).

In order to comply with the Eighth Amendment, prison punishment must comport with "the

16

evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321-22 (1986). In order for a plaintiff to prove a claim of excessive force, the plaintiff must first establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir.1994) (en banc), cert. denied, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Second, the plaintiff must show that the prison officials inflicted unnecessary and wanton pain and suffering. Hudson, 503 U.S. at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-21. In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) the threat reasonably perceived by the responsible official; and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; see also Williams, 77 F. 3d at 762.

Moreover, in the Fourth Circuit, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Norman, 25 F.3d at 1263.[23] A *de minimis* injury reveals that *de minimis* force was used. Id. at 1262. However, the Fourth Circuit has also acknowledged that in certain circumstances a claim may be made even if the injury is *de minimis*. Specifically, the Fourth Circuit has stated:

> There may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. *Cf.* Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury). In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the *de minimis* force exception, see Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 (citations omitted), or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

Norman, at 1264, n. 4.

Here, the plaintiff has alleged injuries that are more than *de minimis*. Moreover, the kind of behavior alleged in the complaint, if true, could establish a violation of the Eighth Amendment. Accordingly, based on the facts now before the Court, the undersigned is of the opinion that defendants King, Miller, Martin, Bennett, Vance, Cox, and Pigley should be made to answer the complaint as to the plaintiff's Eighth Amendment claims.

## V. Recommendation

---

[23] In Norman, a jail officer began swinging his cell keys in the direction of the prisoner's face when the prisoner became disruptive. The prisoner asserted that he put his hands up to cover his face, and the keys hit his right thumb causing his right hand to swell. The Court ruled that the prisoner sustained *de minimis* injuries proving that *de minimis* force was used.
  Further, the Fourth Circuit found in Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), cert. denied, 525 U.S. 1181 (1999), that the detainee's medical records revealed that as a result of the incident, the detainee suffered from "abrasions on his wrists and ankles, slight swelling in the jaw area, tenderness over some ribs and some excoriation of the mucous membranes of the mouth" and that such injuries were *de minimis*.
  On the other hand, the United States Supreme Court has found that "bruises, swelling, loosened teeth and a cracked dental plate" are not *de minimis*. Hudson at 10.

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss (Dkt.# 33) be **GRANTED** only as to defendants Sgt. Michael Wayne and Chad Cardinal Esq., and **DENIED** as to the other defendants; plaintiff's motion to deny defendants' motion to dismiss (Dkt.# 47) be **GRANTED** with respect to all but defendants Sgt. Michael Wayne and Chad Cardinal, Esq.; plaintiff's motion to strike and/or dismiss defendants' reply to plaintiff's response to defendants' motion to dismiss (Dkt.# 50) be **DENIED**. Further, the undersigned recommends that the remaining defendants respond to the claims made against them.

**Within fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: August 9, 2011

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE