IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS BROWN,

         Petitioner,

v.                                      Civil Action No. 5:10CV93
                                                          (STAMP)
JOHN KING, Chief of Operations,
WV Regional Jail Authority;
TERRY MILLER, Executive Director;
WARDEN MICHAEL MARTIN,
Administrator TVRJ;
CHAD M. CARDINAL, ESQUIRE,
General Counsel, TVRJ;
MATTHEW BENNETT,
Correctional Officer, TVRJ;
JOHN DOE VANCE,
Correctional Officer, TVRJ;
LT. RICHARD COX,
Chief Correctional Officer, TVRJ;
JOHN DOE PIGLEY,
Correctional Officer, TVRJ;
and SERGEANT MICHAEL WAYNE,
Correctional Officer, TVRJ,

         Defendants.


                   **MEMORANDUM OPINION AND ORDER**
                   **AFFIRMING AND ADOPTING REPORT AND**
                   **RECOMMENDATION OF MAGISTRATE JUDGE,**

                        I.  Procedural History

     On September 8, 2010, the pro se[1] petitioner, Thomas Brown ("Brown"), initiated this action in the United States District Court for the Southern District of West Virginia by filing a civil rights complaint under 42 U.S.C. § 1983.  An order was then entered on September 14, 2010 transferring the action to this Court where

---

     [1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer.  Black's Law Dictionary 1341 (9th ed. 1999).

it was referred to United States Magistrate Judge James E. Seibert for initial review and report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2.

After the plaintiff provided Magistrate Judge Seibert with copies of the grievance forms submitted to support his claim that he had exhausted his administrative remedies, Magistrate Judge Seibert found on January 31, 2011 that his preliminary review of the case did not lead to a finding that summary dismissal was appropriate, and thus he directed the Unites States Marshals Service to serve the defendants with the complaint.

Defendants then filed a motion to dismiss and, because the plaintiff is proceeding pro se, the magistrate judge issued a Roseboro[2] notice. The plaintiff filed a response to the defendants' motion on May 19, 2011 and the defendants timely replied. Plaintiff then filed a response to the defendants' reply, and defendants replied to the plaintiff's response to their reply. On September 1, 2011, Magistrate Judge Seibert issued his report and recommendation on this case recommending that this court grant the defendants' motion to dismiss in part and dismiss defendants Sergeant Michael Wayne ("Wayne") and Chad M. Cardinal, Esquire ("Cardinal") as, in the magistrate judge's opinion, the plaintiff had failed to state a claim upon which relief could be granted as to the claims against these defendants. However, Magistrate Judge

---

[2]Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a pro se plaintiff of his right to file material in response to a motion for summary judgment).

Seibert also recommended that the defendants' motion to dismiss be denied as to the remaining defendants and that those defendants be directed to respond to the plaintiff's complaint.

The magistrate judge informed the parties that if they objected to any portion of the report and recommendation, they were required to file written objections within fourteen days after being served with copies of the report. Neither party filed objections.

## II. Facts

Plaintiff entered Tygart Valley Regional Jail ("TVRJ") on or about May 3, 2008. The plaintiff avers that while an inmate at TVRJ, he was moved thirteen different times as a result of threats to his physical safety, and/or verbal and physical altercations. He claims that the defendants each took part in deliberately placing him in a cell block with inmates against whom he had existing "keep away" orders, about which the defendants knew or should have known. He further contends that on or about September 7, 2008, as a result of this cell assignment, he suffered a severe beating at the hands of the inmates from whom he was originally supposed to be kept away, along with eight to ten other inmates. Plaintiff states that this beating left him with serious facial injuries which included a broken nose, split lip, and a facial fracture which required the surgical insertion of a plate in order to fix. He also asserts that his shoulder was kicked out of place and that his eye had to be "pushed back into his skull." He claims

3

that his injuries from this beating required a number of stitches, including fifteen each in his lip and/or shoulder, and emergency treatment at two different outside hospitals.

Plaintiff, an African American, also contends that, after the beating on September 7, 2008, he was removed from the infirmary and intentionally placed in a cell block that was known to house only self professed Ku Klux Klan ("KKK") and Aryan Brotherhood Caucasian inmates, placing him in life-threatening danger of further attack. The plaintiff contends that his move to this pod was for the sadistic viewing pleasure of the Caucasian defendants. However, the plaintiff makes no contention that any beating actually occurred during his time in this pod.

In addition to the above, plaintiff argues that the physical and psychological injuries that resulted from the beating and from his placement in the cell block housing "hate mongering" inmates have not been completely repaired, and that the defendants have denied him access to proper medical treatment beyond the initial treatment that he received after the beating took place.

Plaintiff claims that he filed grievances as a result of the cell block placement which placed his life in immediate danger, as well as after the beating, and that his grievances went unheeded. He alleges that defendants John King ("King") and Terry Miller ("Miller") were "responsible for the grievances" and that they were aware of the keep away orders, but did nothing to protect the plaintiff from attack, and thus, "gave tacit authorization" to the

actions of the other inmates and defendants. He also alleges that defendant Mike Martin ("Martin") was personally notified of the plaintiff's complaints and did nothing to protect him from the beating, thus he also "gave tacit authorization" to the beatings.

The plaintiff claims that defendant Matthew Bennett ("Bennett") moved him to the pod where the beating took place, even though he knew or should have known of the keep away order in effect as to other inmates in the pod. The plaintiff also contends that defendant Bennett was present at the time of the beating on or about September 17, 2008, and that, in order to protect himself, "wrote a disciplinary fight" against the plaintiff despite the fact that he was only "covering up" and not fighting back during the beating.

Plaintiff alleges that defendant John Doe Pigley ("Pigley") was working on the "tower" on the day of his beating, and did nothing to protect him, but rather waited to respond, resulting in more severe injuries than the plaintiff would have suffered had defendant Pigley responded in a more timely fashion.

As for defendant John Doe Vance ("Vance"), the plaintiff claims that defendant Vance was the official who transferred him to the pod containing the KKK and Aryan Brotherhood inmates, and that defendant Vance often verbally assaulted him. The plaintiff also alleges that when the plaintiff protested his placement in the pod with the KKK and Aryan Brotherhood inmates, defendant Vance twisted

5

the plaintiff's injured arm and threw him into his cell.[3] Further, the plaintiff asserts that defendant Vance entered his cell on multiple occasions and threw objects at the plaintiff "in an attempt to further cause [him] harm and pain."

The plaintiff alleges that defendant Lt. Richard Cox ("Cox") refused to take pictures of the plaintiff's injuries after the attack, lied when asked why plaintiff was placed into protective custody, and that defendant Cox was the one who actually ordered the plaintiff to be placed in the pod containing the KKK and Aryan Brotherhood inmates.

Plaintiff alleges that defendant Sergeant Michael A. Wayne admitted to the plaintiff that several inmates told him that they had jumped the plaintiff and were proud of it. Defendant Wayne was the official who told the plaintiff that it was in his best interest to go into protective custody.

Finally, the plaintiff argues that defendant Chad M. Cardinal, Esquire was aware that several inmates had warned that there would be problems from other inmates with regard to the plaintiff's personal safety, but denied the plaintiff's request to disclose exactly how many keep away orders were actually in place and denied his request for a copy of a list of the keep away orders.

---

[3]The plaintiff filed a grievance regarding this incident on September 15, 2008, in which he alleged that defendant Vance took him to the floor, attempted to break his left thumb, and pulled his ear. The grievance states that the plaintiff called for help, and Vance stopped when help arrived.

Plaintiff asserts that he has filed grievances to inform the defendants of his complaints, and thus has exhausted his administrative remedies.[4] He alleges that these grievances have been met with "complete and utter deliberate indifference," and that the inmates who attacked him in September 2008 were never disciplined.

## III. Applicable Law

As there were no objections filed to the magistrate judge's recommendation, the findings and recommendation will be upheld unless they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

## IV. Discussion

In his report, the magistrate judge focuses on whether the plaintiff has asserted a non-frivolous claim against each of the defendants with regard to their deliberate indifference on three bases: (1) deliberate indifference as to his incarceration under dangerous conditions posed by other prisoners, (2) deliberate indifference to excessive force being used against him by jail staff, and (3) deliberate indifference to his serious medical needs. The magistrate judge also addresses the plaintiff's allegations of verbal threats and harassment, as well as

---

[4]In support of this assertion, plaintiff provided the Court copies of three WV Regional & Correctional Facility Authority Inmate Grievance form reports, two WV Regional & Correctional Facility Authority Inmate Request forms, and two letters with text nearly identical to the Grievance and Request forms, each titled "Grievance."

plaintiff's claims of excessive force in prison punishment under the cruel and unusual punishment clause of the Eighth Amendment.

A. <u>Deliberate Indifference</u>

A prisoner may assert a claim of failure to prevent harm under the Eighth Amendment's cruel and unusual punishment clause, and thus under 42 U.S.C. § 1983, if he can show that "he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials act with "'deliberate indifference' to inmate health and safety.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)(quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). In <u>Farmer</u>, the Supreme Court held that, while it left open the level at which the risk of harm to a prisoner becomes a "substantial risk of serious harm" (<u>Id.</u> at n.3), no prison official can be held liable for "deliberate indifference" to that risk unless he subjectively "knows of and disregards" it. <u>Id.</u> at 837. In order to possess this level of culpability, "the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." <u>Id.</u>

With regard to the plaintiff's claims that the defendants acted with deliberate indifference to his serious medical needs, in order to make out an Eighth Amendment claim of failure to prevent harm, the plaintiff must show (1) that the medical need was "sufficiently serious" that a failure to address the need constitutes a deprivation of "'the minimal civilized measures of

life's necessities,'" and (2) that subjectively, the prison official acted with the required "culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297-98 (1991). In order for the medical need of an inmate to be "sufficiently serious" to rise to the level of an Eighth Amendment violation if not properly treated, it must be "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective requirement that prison officials act with a "sufficiently culpable state of mind," may be satisfied when a prisoner is able to show deliberate indifference on the part of the defendants. Wilson, 501 U.S. at 303. Deliberate indifference is "something more than mere negligence [but] . . . something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. In effect, the official must actually be aware of the risk of harm, must *subjectively* assess it as being substantial and serious, and then must deliberately disregard it despite his awareness and assessment of its severity. If the prison official does not subjectively assess the risk as being substantial and

serious, he cannot be held liable, notwithstanding any objective irrationality of his assessment. See Farmer at 837-844.

With this in mind, this Court agrees with the magistrate judge that the plaintiff has failed to assert a claim against defendants Wayne and Cardinal. In order for an official to be held personally liable in a § 1983 claim, the official must have been directly involved in the misconduct. See Monell v. Department of Social Services, 436 U.S. 658 (1978). As to defendants Wayne and Cardinal, there is no allegation that either was personally involved in any of the alleged abuse. Additionally, any wrongdoing that is alleged by the plaintiff on either of their parts occurred within an exercise of judgment and discretion reasonably employed within the scope of their respective official duties.

Defendant Wayne is charged with the knowledge of the risk to the plaintiff's safety because inmates had bragged to him about jumping the plaintiff. However, the plaintiff then admits that defendant Wayne suggested that the plaintiff go into protective custody in order to avoid further violence. Thus, it appears from the record that defendant Wayne actually took affirmative steps to ensure the plaintiff's safety rather than deliberately taking a position of indifference to it.

Defendant Cardinal is charged with exercising his judgment as general counsel for TVRJ to refuse the plaintiff's request to view the protective orders in place. There is no allegation that

10

defendant Cardinal was aware that the plaintiff had been housed with inmates against whom there was a protective order either before or after the September 17, 2008 beating, nor is there any allegation that defendant Cardinal participated in any of the wrongdoing. This Court agrees that defendant Cardinal was well within the reasonable exercise of his discretion as general counsel to refuse to release confidential documents without a court order. Therefore, this Court agrees that the plaintiff cannot maintain his action against either defendant Wayne or defendant Cardinal.

B.  Verbal Threats and Harassment

Likewise, this Court agrees that any claims against defendant Vance or any other defendant which allege verbal threats or harassment are without merit and cannot be maintained. It is well established that verbal attacks cannot rise to the level of an Eighth Amendment violation, no matter how egregious they may be, and as such, no claim of constitutional violation or violation of 42 U.S.C. § 1983 which is grounded in verbal harassment or threat can result in liability. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); Pierce v. King, 131 F.3d 136 (4th Cir. 1997).

C.  Excessive Force in Prison Punishment

Under the Eighth Amendment "cruel and unusual punishment" clause which applies to the states through the Fourteenth Amendment Due Process Clause, prison punishment must be in line

11

with "the evolving standards of decency that mark the progress of a maturing society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976). Courts give deference to a jail official's determination of the measures necessary to maintain security, but "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment and is prohibited by the Eighth Amendment. <u>Whitely v. Albers</u>, 475 U.S. 312, 321-22 (1986). In order to maintain an action of cruel and unusual punishment, a prisoner must show, objectively, that the wrongdoing was "'harmful enough' to establish a constitutional violation," and that it resulted in unnecessary and wanton pain and suffering that was more than <u>de minimus</u>. <u>Farmer v. Brennan</u>, 511 U.S. at 837; <u>Norman v. Taylor</u>, 25 F.3d 1259, 1263 (4th Cir. 1994)(en banc), <u>cert. denied</u>, 513 U.S. 1114 (1995)).

When it comes to prison discipline resulting from disturbances, the defendant's action must be weighed with the need to keep order and discipline to determine whether the defendant acted in good faith, or if he acted "maliciously or sadistically for the very purpose of causing harm." <u>Whitely</u>, 475 U.S. at 320-21. This Court concurs with the magistrate judge that the injuries that plaintiff has alleged are greater than <u>de minimus</u> injuries, and that his allegations, if true, could amount to a violation of the Eighth Amendment. Therefore, this court affirms the magistrate judge's opinion that defendants King, Miller,

12

Martin, Bennett, Vance, Cox, and Pigley must answer the plaintiff's complaint as to the claims made against them.

## V. Conclusion

Because the parties have not objected to the report and recommendation of the magistrate judge, and because this Court finds that the magistrate judge's recommendation is not clearly erroneous, the ruling of the magistrate judge is hereby AFFIRMED and ADOPTED in its entirety. Accordingly, the defendants' motion to dismiss is GRANTED as to defendants Sergeant Michael Wayne and Chad M. Cardinal, Esquire, and DENIED as to all other defendants. Further, the plaintiff's motion to deny the defendants' motion to dismiss is GRANTED with respect to King, Miller, Martin, Bennett, Vance, Cox and Pigley and DENIED with respect to defendants Wayne and Cardinal ONLY. Finally, the plaintiff's motion to strike and/or dismiss defendants' reply to plaintiff's response to defendants' motion to dismiss is DENIED. The remaining defendants are instructed to respond to the claims that the plaintiff has made against them.

Finally, this Court finds that the petitioner was properly advised by the magistrate judge that failure to timely object to the report and recommendation in this action would result in a waiver of appellate rights. Because the petitioner has failed to object, he has waived his right to seek appellate review of this matter. See Wright v. Collins, 766 F.2d 841, 844-45 (4th Cir. 1985).

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the pro se petitioner by certified mail and to counsel of record herein.

DATED:    September 13, 2011

                                        /s/ Frederick P. Stamp, Jr.
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE