IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


THOMAS BROWN,

      Plaintiff,

v.                                 Civil Action No. 5:10CV93
                                           (STAMP)

JOHN KING, Chief of Operations,
WV Regional Jail Authority;
TERRY MILLER, Executive Director;
WARDEN MICHAEL MARTIN,
Administrator TVRJ;
CHAD M. CARDINAL, ESQ.,
General Counsel, TVRJ;
MATTHEW BENNETT,
Correctional Officer, TVRJ;
JOHN DOE VANCE,
Correctional Officer, TVRJ;
LT. RICHARD COX,
Chief Correctional Officer, TVRJ;
JOHN DOE PIGLEY,
Correctional Officer, TVRJ;
SARGENT MICHAEL WAYNE,
Correctional Officer, TVRJ,

      Defendants.


**MEMORANDUM OPINION AND ORDER**
**AFFIRMING AND ADOPTING REPORT AND**
**RECOMMENDATION OF MAGISTRATE JUDGE, AND**
**DISMISSING COMPLAINT WITH PREJUDICE**


I.  Procedural History

The pro se[1] plaintiff, Thomas Brown, initiated this action in

the United States District Court for the Southern District of West

Virginia by filing a civil rights complaint under 42 U.S.C. § 1983.

An order was then entered transferring the action to this Court

where it was referred to United States Magistrate Judge James E.

---

[1]"Pro se" describes a person who represents himself in a court
proceeding without the assistance of a lawyer. Black's Law
Dictionary 1341 (9th ed. 1999).

Seibert for initial review and report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2.

Following initial review and service of the defendants, the defendants filed a motion to dismiss, which was fully briefed by the parties. Magistrate Judge Seibert then issued a report and recommendation recommending that this Court grant the defendants' motion to dismiss in part and dismiss defendants Sergeant Michael Wayne ("Wayne") and Chad M. Cardinal, Esquire ("Cardinal") as, in the magistrate judge's opinion, the plaintiff had failed to state a claim upon which relief could be granted as to the claims against these defendants. However, Magistrate Judge Seibert also recommended that the defendants' motion to dismiss be denied as to the remaining defendants and that those defendants be directed to answer the plaintiff's complaint. This Court then entered a memorandum opinion and order which affirmed and adopted the magistrate judge's report and recommendation in its entirety, dismissed defendants Wayne and Cardinal, and directed that the case move forward as to the other defendants.

Following this Court's memorandum opinion and order, an order of reference was entered, directing Magistrate Judge Seibert to oversee discovery, and to issue a report and recommendation regarding whether or not this case should be set for trial. The parties engaged in discovery over a period of a number of months, and the defendants filed a motion for summary judgment, which has been fully briefed. The magistrate judge then issued a second

report and recommendation which, based upon the full record established through discovery, recommended that summary judgment be granted in favor of the defendants. The magistrate judge informed the parties that they were entitled to file any objections to his report and recommendation within fourteen days after receiving the report. The plaintiff filed timely objections which both argue that his claims should be set for trial, and that the magistrate judge's report and recommendation was entered prematurely. For the reasons that follow, this Court will affirm and adopt the magistrate judge's report and recommendation in its entirety and dismiss this civil action.

## II.  <u>Facts</u>

Plaintiff entered Tygart Valley Regional Jail ("TVRJ") on or about May 3, 2008. While an inmate at TVRJ, the plaintiff says that he was moved thirteen different times as a result of threats to his physical safety, and/or verbal and physical altercations. Despite these numerous safety issues, he claims that the defendants each took part in deliberately placing him in a cell block with inmates against whom he had existing "keep away" orders, about which the defendants knew or should have known. He further contends that on or about September 7, 2008, as a result of this cell assignment, he suffered a severe beating at the hands of eight to ten other inmates, among whom were the inmates from whom he was originally supposed to be kept away. Plaintiff states that this beating left him with serious facial injuries which included a

broken nose, split lip, and a facial fracture which required the surgical insertion of a plate in order to fix. He also asserts that his shoulder was kicked out of place and that his eye had to be "pushed back into his skull." He claims that his injuries from this beating required a number of stitches, including fifteen each in his lip and/or shoulder, and emergency treatment at two different outside hospitals.

Plaintiff, an African American, also contends that, after the beating on September 7, 2008, he was removed from the infirmary and intentionally placed in a cell block that was known to house only self professed Ku Klux Klan ("KKK") and Aryan Brotherhood Caucasian inmates, placing him in life-threatening danger of further attack. The plaintiff contends that his move to this area was for the sadistic viewing pleasure of the Caucasian defendants. However, the plaintiff makes no contention that any beating actually occurred during his time in this area.

In addition to the above, plaintiff argues that the physical and psychological injuries that resulted from the beating and from his placement in the cell block housing "hate mongering" inmates have not been completely repaired, and that the defendants have denied him access to proper medical treatment beyond the initial treatment that he received after the beating took place. The allegations which plaintiff raises against each of the individual defendants are as follows:

Plaintiff claims that he filed grievances as a result of the cell block placement which placed his life in immediate danger, as well as after the beating, and that his grievances went unheeded. He alleges that defendants John King ("King") and Terry Miller ("Miller") were "responsible for the grievances" and that they were aware of the "keep away" orders, but did nothing to protect the plaintiff from attack, and thus, "gave tacit authorization" to the actions of the other inmates and defendants. He also alleges that defendant Mike Martin ("Martin") was personally notified of the plaintiff's complaints and did nothing to protect him from the beating, thus he also "gave tacit authorization" to the beatings.

The plaintiff claims that defendant Matthew Bennett ("Bennett") moved him to the area where the beating took place, even though he knew or should have known of the "keep away" order in effect as to other inmates in the cell area. The plaintiff also contends that defendant Bennett was present at the time of the beating on or about September 17, 2008, and that, in order to protect himself, "wrote a disciplinary fight" against the plaintiff despite the fact that he was only "covering up" and not fighting back during the beating.

Plaintiff alleges that defendant John Doe Pigley ("Pigley") was working on the tower on the day of his beating, and did nothing to protect him, but rather waited to respond, resulting in more severe injuries than the plaintiff would have suffered had defendant Pigley responded in a more timely fashion.

As for defendant John Doe Vance ("Vance"), the plaintiff claims that defendant Vance was the official who transferred him to the area containing the KKK and Aryan Brotherhood inmates, and that defendant Vance often verbally assaulted him. The plaintiff also alleges that when the plaintiff protested his placement in the area with the KKK and Aryan Brotherhood inmates, defendant Vance twisted the plaintiff's injured arm and threw him into his cell. Further, the plaintiff asserts that defendant Vance entered his cell on multiple occasions and threw objects at the plaintiff "in an attempt to further cause [him] harm and pain."

The plaintiff alleges that defendant Lt. Richard Cox ("Cox") refused to take pictures of the plaintiff's injuries after the attack, that defendant Cox lied when asked why plaintiff was placed into protective custody, and that defendant Cox was the one who actually ordered the plaintiff to be placed in the area containing the KKK and Aryan Brotherhood inmates.

Plaintiff asserts that he has filed grievances to inform the defendants of his complaints, and thus has exhausted his administrative remedies. He alleges that these grievances have been met with "complete and utter deliberate indifference," and that the inmates who attacked him in September 2008 were never disciplined.

### III. Applicable Law

The magistrate judge recommends that the plaintiff's complaint be dismissed both for failure to exhaust his

administrative remedies, and on the merits. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a _de novo_ review of any portion of the magistrate judge's recommendation to which objection is timely made. The plaintiff's objections offer response to the magistrate judge's opinion regarding the merits of his claims, but do not object to his recommendation that the complaint be dismissed for failure to exhaust. Accordingly, this Court will review the magistrate judge's recommendations regarding the merits of the plaintiff's claims _de novo_, but will conduct a review of his recommendations regarding exhaustion for clear error.

## IV. _Discussion_

### A. _Plaintiff's objections regarding alleged prematurity of report and recommendation_

In his objections to the magistrate judge's report and recommendation, the plaintiff first argues that the report was prematurely issued. Specifically, the plaintiff notes that he "had to file a Contempt Order because the Defendant's [sic] would not provide needed and necessary documents ORDERED by the Court." ECF No. 151 *2. Thus, he says that he did not receive all discovery from the defendants until October 2, 2012, when the magistrate judge mandated that the defendants file the plaintiff's medical records. Accordingly, the plaintiff argues, the defendants' motion for summary judgment, filed on April 30, 2012, and the magistrate judge's report and recommendation, filed

twenty-nine days after he received the entirety of the discovery in this matter, were each prematurely filed before he was able to fully review the records provided to him.

This Court recognizes that the plaintiff did not receive all of his medical records until after the close of discovery on March 30, 2012,[2] and after the defendants' motion for summary judgment was timely filed on April 30, 2012.[3] However, review of the docket in this case reveals that the plaintiff was in possession of all requested medical records prior to the issuance of the magistrate judge's report and recommendation. Accordingly, the plaintiff had the benefit of these documents in fashioning his objections to that report. Further, following a motion by the plaintiff requesting additional time to review the medical records and to otherwise prepare his objections, this Court granted the plaintiff a sixty-day extension to fully prepare and file his objections in the form that he desired to file them. Thus, because the plaintiff has now had the opportunity to review the medical records provided to him following the close of discovery, and has had the ability to utilize those documents in support of his case in his objections to the report and recommendation, this Court

---

[2]Pursuant to the amended scheduling order entered by the magistrate judge on March 22, 2012. ECF No. 97.

[3]By order of Magistrate Judge Seibert, the defendants supplemented their motion for summary judgment on July 9, 2012, and the plaintiff was given until August 9, 2012 to respond to that supplemental memorandum. The plaintiff failed to respond to either the original motion for summary judgment or the supplemental memorandum in support thereof.

finds that he was not prejudiced by the timing of the motion for summary judgment or the report and recommendation.

B.   Report and recommendation

As noted above, the magistrate judge recommended dismissal of the plaintiff's complaint on two independent grounds.  First, he found that the plaintiff failed to properly exhaust his administrative remedies prior to filing this civil action. Second, he found that, even if the plaintiff had exhausted his administrative remedies, his claims should be dismissed on the merits.  This Court will address each of these bases in turn.

1.   Failure to exhaust

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997e.  Exhaustion under § 1997e is mandatory, Booth v. Churner, 532 U.S. 731, 741 (2001), and applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  As exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court.  Actions brought pursuant to Bivens are subject to administrative exhaustion requirements of the PLRA.  Porter, 534 U.S. at 524.

The plaintiff is in the custody of the West Virginia Division of Corrections, and thus must exhaust all administrative remedies provided by the West Virginia Regional Jail Authority ("WVRJA") prior to filing a § 1983 action. The WVRJA provides the following grievance procedure. In order to initiate the process, inmates must first file a grievance to the Administrator of the facility in which they are confined. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, a staff member is assigned to investigate the complaint and submit a report within forty-eight hours. The Administrator will then provide a written decision regarding the grievance. If the decision is unfavorable to the inmate, he may appeal to the Chief of Operations within five days. After receiving all information regarding the inmate's grievance, the Chief of Operations must respond by written decision within ten days. If the inmate again receives an unfavorable response, he may appeal to the Office of the Executive Director. The inmate must receive a response from the Office of the Executive Director within ten days of the office's receipt of all of the information pertaining to the inmate's grievance. Unless the inmate receives an extension of the time for a response at any given level, the inmate may move to the next stage of the process at the expiration of the time limit for response, regardless of whether a response has been received. Unless the inmate has proceeded through each of the above-described steps and the time period for response from

the Office of the Executive Director has passed either with unfavorable response or without response, the inmate has not fully exhausted his administrative remedies.

In response to the magistrate judge's order that the plaintiff present evidence of his exhaustion of the claims presented in this civil action, the plaintiff filed copies of a number of administrative grievances that he allegedly filed, as well as two handwritten documents entitled "Grievance." The defendants also submitted copies of forty-eight administrative requests and grievances filed by the plaintiff. The defendants contest the plaintiff's contention that he filed the handwritten documents, arguing that they have never seen those alleged "grievances."

The magistrate judge found that, based upon all of this evidence, the plaintiff has failed to exhaust any of the claims which he brings in this civil action. This is true, he found, regardless of whether the grievances filed related to the claims made in this case, and regardless of whether the plaintiff actually filed all of the documents that he claims to have filed, because no evidence has been offered by the plaintiff to suggest that he ever appealed any of the grievances presented. Accordingly, based upon the grievance process outlined above, the plaintiff failed to fully exhaust any of the claims which he brings in this case. After review of the record, this Court agrees with the magistrate judge that the plaintiff has not shown

that he appealed a single grievance beyond the initial filing with TVRJ. Accordingly, the magistrate judge's report and recommendation is not clearly erroneous in this regard.[4] As such, this Court will affirm and adopt the magistrate judge's recommendation for dismissal based upon failure to exhaust.

    2.    Merits

    Further, even if the plaintiff had properly exhausted the claims raised in this civil action, his claims nonetheless fail on the merits. This Court will review the plaintiff's claims in the same order in which the magistrate judge reviewed them in his report and recommendation.

        a. Claims against defendants King, Miller, and Martin

    The claims raised against these defendants, all supervisors in varying capacities, all derive from the allegation that these defendants are responsible for the alleged wrongdoers in this case, and that they were aware of the alleged wrongdoings perpetrated against the plaintiff and failed to intervene or take measures to prevent them. Rather, the plaintiff claims, these defendants all acquiesced in or tacitly authorized the behavior of the alleged wrongdoers. As to these claims, the plaintiff has failed to allege sufficient culpability on the part of these defendants in order to support § 1983 liability.

_____

    [4]As noted above, the plaintiff failed to object to the magistrate judge's findings with regard to failure to exhaust.

Liability under § 1983 is personal, meaning that a defendant cannot be held liable based solely upon respondeat superior, but rather must have been personally involved in the wrongdoing alleged in the plaintiff's complaint. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). With regard to supervisors not directly involved in alleged wrongdoing, § 1983 liability must be predicated upon one of two circumstances. First, a supervisor may be held liable for the actions of subordinates acting pursuant to an official policy or custom for which the supervisor is responsible. Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1113 (4th Cir. 1982). Second, supervisor liability can be based upon a showing that the defendant knew of the alleged wrongful behavior of the subordinate, that he responded so inadequately so as to constitute "deliberate indifference to or tacit authorization of" the wrongful activity, and that there was a causal link between this inadequate response and the plaintiff's alleged injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

After de novo review, this Court agrees with the magistrate judge that the plaintiff has failed to make any allegation which either claims that these defendants were personally involved in the wrongdoing alleged, or that qualifies as one of the required showings for "supervisor liability." The plaintiff alleges in his complaint that these defendants were responsible for those who allegedly ignored a "keep away" order, which resulted in the

plaintiff being attacked on September 7, 2008, failed to properly treat the plaintiff's injuries, and placed him in an area containing only KKK and Aryan Brotherhood inmates. He also alleges that these defendants were aware of the actions alleged in the complaint because of grievances allegedly filed by the plaintiff, but failed to act on those grievances. The magistrate judge found, and this Court agrees, that these allegations are insufficient to create a possibility of liability of these defendants.

In order for activity of subordinates to qualify as creating a "pervasive" and "unreasonable" risk of harm to inmates so as to require a supervisor to act under § 1983, a plaintiff must show that the activity alleged is "widespread," or at least that it occurred multiple times, and that that activity creates "an unreasonable risk of harm." Id. Here, the plaintiff alleges three incidents, all involving different alleged behavior by these defendants' subordinates, about which the plaintiff only allegedly informed these defendants following each incident. This does not constitute "widespread" or even recurring behavior on the part of subordinates. Further, behavior alleged cannot be said to have created an "unreasonable" risk of harm to the plaintiff. There is no evidence that any of the defendants were aware of any "keep away" order involving the inmates who assaulted the plaintiff,[5] and there is no evidence that the plaintiff even suffered harm when

_____

[5]See explanation in subsection c. below.

14

placed in the area with the alleged KKK and Aryan Brotherhood inmates. Further, the plaintiff has presented no evidence that his medical needs were improperly handled.[6]

In his objections, the plaintiff claims that the allegedly wrongful housing placement was done pursuant to some policy or custom, but he offers no support for these allegations. He gives no indication of what this policy or custom might be, and offers no evidence of the same. As unsupported conclusory allegations cannot create an issue of material fact, these objections by the plaintiff fail to change this Court's opinion of the allegations against these defendants, and these allegations must be dismissed.

b. Claims against defendant John Doe Vance, Correctional Officer

The plaintiff alleges that defendant Vance entered his cell following his reassignment after the plaintiff was assaulted, and "took him to the floor," allegedly utilizing excessive force against him. He claims that defendant Vance also entered his cell on other occasions and threw things at him. However, aside from the allegations in the plaintiff's complaint, and the alleged handwritten grievances that the plaintiff claims to have filed in relation to this incident, no evidence has been presented to support the plaintiff's allegations of excessive force. Further, the evidence that has been provided to this Court supports a

---

[6]See explanation in subsection f. below.

conclusion that the incidents of alleged excessive force claimed against defendant Vance never occurred.

The defendants produced recordings of a September 19, 2008 phone conversation wherein the plaintiff stated that he "laid down" and "created a disturbance" in the area in order to be placed elsewhere. ECF No. 102 Ex. 3 *7. Additional recorded phone conversations also suggest that the plaintiff encouraged his family to continuously call the Department of Corrections and voice numerous unfounded complaints until the department asked them what could be done to "get you off our backs." Id. This evidence strongly suggests that the plaintiff created a situation to appear as if he had been injured by defendant Vance, and that no altercation with ever actually occurred. The plaintiff has offered no argument or evidence to rebut this evidence.

Further, the entirety of the plaintiff's medical records for the relevant time period have been produced in this case, and none of these records indicate that the plaintiff ever reported any injury resulting from an altercation with defendant Vance. These records, along with the grievance forms found in the plaintiff's administrative grievance file, indicate that no complaint was ever made by the plaintiff in any capacity regarding any assault that he suffered at the hands of defendant Vance in the plaintiff's cell.[7] As such, this Court finds that the allegations against

---

[7]The defendants have produced the plaintiff's administrative grievance file in an effort to demonstrate that the handwritten letters entitled "Grievance" produced by the plaintiff in support

defendant Vance are baseless and unsupported by any facts or evidence of any kind. These claims are thus dismissed.

        c.  <u>Claims against defendant Matthew Bennett, Correctional Officer</u>

The plaintiff alleges that defendant Bennett moved him into the area with the inmates against whom he had a "keep away" order when defendant Bennett "knew or should have known" of the "keep away" order. It is also alleged that defendant Bennett witnessed the fight, but "wrote a disciplinary fight" against the plaintiff to protect himself, despite the fact that the plaintiff was only "covering up." In order to prove this claim of failure to prevent harm, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials act with "'deliberate indifference' to inmate health and safety.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). In <u>Farmer</u>, the Supreme Court held that, while it left open the level at which the risk of harm to a prisoner becomes a "substantial risk of serious harm" (<u>Id.</u> at n.3), no prison official can be held liable for "deliberate indifference" to that risk unless he subjectively "knows of and disregards" it. <u>Id.</u> at 837. In order to possess this level of culpability, "the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." <u>Id.</u>

_____

of exhaustion in this case were never actually filed with the TVRJ.

Based upon this standard, the plaintiff has failed to support his claims against defendant Bennett. No supporting evidence has been presented, and the claim cannot stand on the plaintiff's bare allegations. No evidence of this "disciplinary fight" has been presented, and even if it had, no evidence has been shown to suggest that it was created for any nefarious or unconstitutional reason. Further, the plaintiff has presented nothing to even suggest that defendant Bennett knew or should have known about any "keep away" order that the plaintiff had against the relevant inmates.

In fact, the defendants have produced the non-association list from the plaintiff's record, which did not include the relevant inmates until after the fight which is the subject of the plaintiff's claims against defendant Bennett. The plaintiff asserts in his objections, with no support for the assertion, that "the keep away was in effect." ECF No. 151 *5. He also claims "it is customary to fail to write down all keep away's, [sic] and may even be policy." Id. at *7. However, again, the plaintiff fails to substantiate any of these assertions with any type of supporting evidence whatsoever. The claims against defendant Bennett are thus dismissed.

### d. Claim against John Doe Pigley, Correctional Officer

The plaintiff also alleges a failure to protect claim against defendant Pigley.[8] He claims that defendant Pigley was also aware or should have been aware of the "keep away," was working in the tower at the time that he was assaulted, and did not respond sufficiently or in a timely manner. Initially, as explained above, the plaintiff has provided no evidence which suggests that any of these defendants were aware or should have been aware of any "keep away" that the plaintiff had against these defendants, and the evidence presented actually suggests the opposite conclusion.

Further, the plaintiff has also provided no evidence to support any reasonable conclusion that defendant Pigley, in the tower at the time of the assault, deliberately delayed in taking action in order to allow the plaintiff to be beaten more severely. The evidence presented actually shows that within five minutes of the plaintiff's arrival in the area where the fight took place, the fight was reported, and promptly handled by correctional officers. Accordingly, because no evidence of failure to protect on the part of defendant Pigley has been presented, this claim too is dismissed.

---

[8]It appears that defendant Pigley's name is actually Christopher Pingley. However, because the plaintiff has identified this defendant as "John Doe Pigley" and no party has moved to amend the complaint to reflect this defendant's correct name, this Court will refer to him as he is named in this case.

e. **Claims against defendant Lt. Richard Cox, Chief Correctional Officer**

The plaintiff alleges that defendant Cox refused to take pictures of the plaintiff's injuries after the assault, intentionally lied about why plaintiff was placed in protective custody, and directed correctional officers to place the plaintiff in the area with only KKK and Aryan Brotherhood inmates. Again, the plaintiff has failed to support any of these allegations with any evidence whatsoever. As the magistrate judge notes, the evidence presented shows that the area in question did not contain "only" KKK and Aryan Brotherhood inmates, but also contained a number of African-American inmates. Further, the defendants presented evidence that defendant Cox was not the one who directed the plaintiff be placed in the area. That decision was actually made by Cpl. Petrice.

As for the claims regarding photographs of the plaintiff's injuries, this Court is unable to ascertain how any such refusal would violate any of the plaintiff's constitutional rights and, even if it did, when or how defendant Cox refused to take any pictures. The evidence shows that the plaintiff requested that photographs be taken of his injuries, and that defendant Cox responded by informing the plaintiff that the assault would be investigated by law enforcement. ECF. No. 19 Ex. 1 *4. No evidence was provided to suggest that any further discussion of the matter ever took place.

Finally, as the magistrate judge notes, and with which this Court agrees, the plaintiff's allegations that defendant Cox lied about the reason why the plaintiff was placed into protective custody are too vague to address. This Court is unable to ascertain the way in which defendant Cox supposedly lied, when this alleged lie took place, or how this alleged lie violated the plaintiff's constitutional rights. The plaintiff has not elaborated on this claim, and no evidence explaining the same has been presented.

    f. <u>Medical claims</u>

Finally, the plaintiff makes general claims that the defendants were deliberately indifferent to his serious medical needs following the assault. In order to make out an Eighth Amendment claim of failure to prevent harm, the plaintiff must show (1) that the medical need was "sufficiently serious" that a failure to address the need constitutes a deprivation of "'the minimal civilized measures of life's necessities,'" and (2) that subjectively, the prison official acted with the required "culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 297-98 (1991). In order for the medical need of an inmate to be "sufficiently serious" to rise to the level of an Eighth Amendment violation if not properly treated, it must be "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Gaudreault v. Municipality</u>

of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied,
500 U.S. 956 (1991); Monmouth County Correctional Institutional
Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert.
denied, 486 U.S. 1006 (1988).

The subjective requirement that prison officials act with a
"sufficiently culpable state of mind" may be satisfied when a
prisoner is able to show deliberate indifference on the part of
the defendants. Wilson, 501 U.S. at 303. Deliberate indifference
is "something more than mere negligence [but] . . . something less
than acts or omissions for the very purpose of causing harm or
with knowledge that harm will result." Farmer, 511 U.S. at 835.
In effect, the official must actually be aware of the risk of
harm, must subjectively assess it as being substantial and
serious, and then must deliberately disregard it despite his
awareness and assessment of its severity. If the prison official
does not subjectively assess the risk as being substantial and
serious, he cannot be held liable, notwithstanding any objective
irrationality of his assessment. See Farmer at 837-844.

As explained above, the plaintiff alleges that he received a
split lip, a dislocated shoulder, facial injuries or fractures, a
broken nose, and "his eye had to be pushed back into his skull"
because it was "laying on his cheek." The plaintiff claims that,
after initial treatment for these injuries, he was denied further
follow-ups, and continues to suffer from these injuries. For the
purpose of this opinion, this Court will assume without deciding

that the plaintiff's injuries were sufficiently serious to constitute "serious medical needs."

However, the plaintiff has also failed to support this claim, as he has shown no indication that the defendants were deliberately indifferent to his medical needs following the incident. He has offered no evidence or even allegation of any specific time when he requested further medical care and was denied that care. Further, the medical records produced in this case clearly show that, at the time of the assault, the plaintiff received medical care both at TVRJ, and off-site at two different hospitals. The medical records also show that the plaintiff's injuries were given extensive follow-up at both the jail and at outside medical facilities, and that he was repeatedly seen, examined and treated by prison medical staff in the months following the assault. The allegations of the plaintiff in his medical claims are thus squarely refuted by the evidence, and will thus be dismissed.

## V. Conclusion

As this Court wholly agrees with the conclusions of the magistrate judge and finds the plaintiff's objections to be without merit, the magistrate judge's report and recommendation is hereby AFFIRMED and ADOPTED in its entirety and the plaintiff's objections are hereby OVERRULED. As such, the defendants' motion for summary judgment is GRANTED, and the plaintiff's complaint is DISMISSED WITH PREJUDICE.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within thirty days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the pro se plaintiff by certified mail and to counsel of record herein.

DATED:     March 6, 2013


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE